UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LEN DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:17-cv-00467-JPH-DLP |
| | ) |
| CHARLES A. DANIELS Former Warden USP Terre Haute, | ) |
| DANIEL RUPSKA Health Director, USP Terre Haute, | ) |
| DOUG SHEPHERD Chief Dental Officer, USP Terre Haute, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Interested Party. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Len Davis, an inmate in the Federal Bureau of Prisons ("BOP"), complained of severe tooth pain for nearly three months before having his tooth extracted. Dkt. 1 at 1. Mr. Davis argues that Defendants provided unconstitutionally deficient medical care. *Id.* Defendants have filed a motion for summary judgment. Dkt. [89]. For the reasons below, that motion is **GRANTED**.

## I.
## Facts and Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to

1

the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

### A.   Mr. Davis' Dental Care

Mr. Davis is a federal inmate at the BOP's Federal Correctional Complex ("FCC") in Terre Haute, Indiana. Dkt. 97 at 6 ¶ 38. During the relevant period, he resided in the "Special Confinement Unit," dkt. 89-18 at 10 (Davis Dep. 10:13–14), where inmates were locked in their cells "[u]p to 23 hours a day," dkt. 89–5 at 32 (Daniels Dep. 126:10–17).

Between December 5 and December 13, 2015, Mr. Davis submitted four requests for care for severe dental pain. Dkt. 89-18 at 21–23 (Davis Dep. 21:19–23:1). After the fourth request, Nurse Susan Porter saw Mr. Davis during sick call and made a note of her visit. Dkt. 89-10. Mr. Davis complained of "Intense Pain in [his] gums . . . in the bottom left side of [his] mouth." *Id.* at 1. Nurse Porter looked at "his left lower gum area" but "did not see anything through the cell window." *Id.* Mr. Davis declined ibuprofen and asked for antibiotics and "to be prescribed pain medication immediately" because he had already tried Aleve, ibuprofen, and Sensodyne toothpaste. *Id.* Mr. Davis said that nothing had alleviated the "intense" pain and that he hadn't "slept in 24 hours." *Id.* Nurse Porter noted that she planned to speak to Dr. Douglas Shepherd, FCC Terre Haute's Chief Dental Officer, "in regard to dental list and inmate requests" and would "forward this note to Dr. Shepherd as well." *Id.*

On December 13, Mr. Davis emailed Andrew Rupska, the Health Services Administrator at FCC Terre Haute, explaining that he felt severe pain in his gums on the bottom left side of his mouth under two filled teeth. Dkt. 89-3. He asked to see a dentist immediately. *Id.* The next morning, on December 14, Mr. Rupska responded that he had forwarded Mr. Davis' request to the dental department. *Id.* That same day, Mr. Davis submitted his fifth request, repeating his symptoms, self-diagnosing his ailment as "infected pulp under tooth," and asking for prescriptions and to see a doctor. Dkt. 97-4 at 1–2; dkt. 89-18 at 24 (Davis Dep. 24:2–4). Mr. Davis also stated that he understood BOP policies to require "prompt attention" for "emergencies of a medical nature." Dkt. 97-4 at 2.

On December 16, 2015, Dr. Shepherd wrote Mr. Davis a letter informing him that his name was on the waiting list:

> Per the triage nurse, you had no visible swelling or drainage therefore, you[r] condition is not considered life threatening. Due to your condition not being life threatening, you are not an urgent condition. You will be seen in order of your complaint. When your name reaches the top of the waiting list you will be seen to evaluate your needs. You can continue to take over the counter medications for pain. I will write you a prescription for antibiotics to counter an underlying problem that is not visible with obvious swelling and drainage.

Dkt. 89-11. Dr. Shepherd then prescribed Mr. Davis a round of penicillin for "[d]isease of hard tissues of teeth, other" and noted that "[p]atient has several complaints of gums and teeth hurting." Dkt. 89-12. He also noted that "[t]riage nurses have found no swelling or drainage with patient[']s complaint.

3

Rx will be written to eliminate any unseen possible infection, if present. Patient will be seen in order of complaint." *Id.*

That same day, Mr. Davis stopped Mr. Rupska as he walked by his cell door to discuss Dr. Shepherd's response to his BP-8. Dkt. 89-18 at 35–36 (Davis Dep. 35:19–36:8). Mr. Rupska read Dr. Shepherd's response and said that he "agree[d] with it." *Id.* at 36 (36:9). He added, "if [Mr. Davis] were on the street, no other dentist would place [him] ahead of any other patients regardless of [his] pain." *Id.* (36:9–13). Mr. Rupska also expressed frustration that "Dr. Shepherd prescribed medication to [Mr. Davis] without ever seeing [him]." *Id.* (36:14–17). But Dr. Shepherd "routinely" prescribed antibiotics without seeing patients. Dkt. 89-8 at 74 (Shepherd Dep. 74:3–10).

Two days later, on December 18, 2015, Mr. Davis filed a request for administrative review:

> Since 12-3-15 I've suffered with severe pain in a "pulp" under lower back teeth. From 12-12-15 thru 12-13-15 I got 1 hour of sleep in a 39 hour period. I stood on my feet 26 hours with one hour of sleep. Pain increased exponentially when I attempted to sit or lay down. Commissary's 'Aleve', 'Ibuprofen', and Sensodyne toothpaste was ineffective. 'Medical' refused to give me anything for pain and chief dental officer 'Shepherd' refused to see me as a 'emergency dental patient.' His 'litmus test' for 'emergency dental treatment' is: "<u>life threatening condition.</u>" This violates B.O.P. Policy 6400.02 (Dental Services) D.(1). Also it violates 8th Amendment. . . . I'm requesting to be given proper effective pain medication until I can be seen by a dentist. I also request that B.O.P. Policy be adjusted to reflect that proper attention should be given to prisoners by a doctor who can properly prescribe pain medication.

Dkt. 89-6 (emphasis in original). Under BOP Policy 6400.02(8)(d)(1), 24-hour emergency dental care "will be available to all inmates," including "treatment for relief of severe dental pain" and "acute infections." Dkt. 97-1 at 10–11.

4

On January 7, 2016, Dr. Shepherd examined Mr. Davis, noting a "Toothache" as Mr. Davis' "Chief Complaint." Dkt. 89-13 at 1. Mr. Davis complained about pain in the gum behind tooth #18, a lower-left molar. *Id.*; dkt. 89-9 at 2 (Shepherd Decl. ¶ 11). Dr. Shepherd took "[x]-rays of the area, which revealed . . . plaque and bone loss between the roots." Dkt. 89-9 at 2 (Shepherd Decl. ¶ 11). Mr. Davis had a painful reaction to Dr. Shepherd tapping on the tooth, "an indication that he ha[d] an abscess." Dkt. 89-8 at 83–84 (83:20–84:2). Dr. Shepherd also observed bleeding after probing tooth #18. *Id.* at 84 (84:3–5). In addition, tooth #17 was "impacted," meaning "it was way below the gum and the bone," and Dr. Shepherd could not "feel the tooth with [his] probe." *Id.* at 84 (84:5–19).

Dr. Shepherd concluded that Mr. Davis had chronic gingivitis induced by plaque. *Id.* at 85 (85:8–12); dkt. 89-13 at 1. Dr. Shepherd then placed a resin/glass ionomer restoration material on the tooth, dkt. 89-13 at 2, believing it could "treat the tooth and hopefully restore it," dkt. 89-9 at 2 (Shepherd Decl. ¶ 12). Dr. Shepherd instructed Mr. Davis on proper flossing techniques and prescribed a five-day course of penicillin for gingivitis and inflammation of the gums. Dkt. 89-8 at 85 (Shepherd Dep. 85:18–25); dkt. 89-13 at 1–2. Dr. Shepherd also told Mr. Davis that his gums were infected, he had a broken tooth, and he was experiencing an abscess tooth. Dkt. 89-18 at 26 (Davis Dep. 26:1–6). Mr. Davis "started flossing for the next ten days" but still experienced pain. *Id.* at 26–27 (26:23–27:5).

On January 18, 2016, Mr. Davis submitted another sick call request. *Id.* at 28 (28:1–4). And on January 21, Warden Charles Daniels denied Mr. Davis' December 18 request for administrative review:

> A review of your medical record reveals you submitted a dental sick call request on December 5, 2015, and are currently waiting for an appointment to see the dentist to evaluate your complaint. The dentist processes non-emergent complaints in the order they are received. Per the triage nurse, you have no visible swelling or issues which are considered emergent. Only life threatening issues are considered urgent to the point of being seen before other complaints. Your complaint and symptoms are not life threatening and, therefore, routine in nature. The dentist did prescribe you an antibiotic on December 16, 2015, for any possible underlying infection. You state you already have pain medication, though you claim it does not eliminate the pain. The dental department will not prescribe you a stronger pain medication for this type of complaint. You can purchase over the counter medications through commissary if needed for your pain. If your condition worsens, please report to Dental sick-call for reevaluation.

Dkt. 89-7.

On February 10, 2016, Mr. Davis requested an update from Dr. Shepherd, dkt. 97-2; on February 18, a nurse observed swelling, dkt. 89-15; and on February 22, Dr. Shepherd prescribed a new course of antibiotics without examining Mr. Davis, dkt. 89-16. On February 25, 2016, Dr. Shepherd performed a dental exam. Dkt. 89-17. Dr. Shepherd observed that tooth #18 was loose, bleeding, and positive to percussion, with bone loss between the roots and a possible abscess or infection. *Id.*; dkt. 89-8 at 79, 93–94 (Shepherd Dep. 79:1–11, 93:2–94:15); dkt. 97-3. Dr. Shepherd extracted tooth #18 and prescribed Mr. Davis ibuprofen. Dkt. 89-17 at 2.

6

B. **Procedural History**

In October 2017, Mr. Davis sued several defendants for damages and declaratory relief, asserting *Bivens* claims for failure to provide adequate medical treatment. *See* dkt. 1 at 1, 10; *see Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (noting recognition of *Bivens* claims for Eighth Amendment violations). Some defendants have been dismissed, dkt. 38, dkt. 39; Dr. Shepherd, Andrew Rupska, and Charles Daniels remain.

C. **Defendants**

**1. Douglas Shepherd**

From 2007 to 2019, Dr. Douglas Shepherd served with the United States Public Health Service ("PHS") as FCC Terre Haute's Chief Dental Officer. Dkt. 89-9 at 1 (Shepherd Decl. (¶¶ 2–3). He oversaw inmate dental care, *id.* at 1 (Shepherd Decl. ¶ 6), and—during the relevant period—was FCC Terre Haute's only dentist, dkt. 89-8 at 33–34 (Shepherd Dep. 33:21–34:4); dkt. 89-18 at 39 (Davis Dep. 39:6–13). As a result, Dr. Shepherd had sole responsibility for dental care for all 3,600 inmates at FCC Terre Haute. Dkt. 89-8 at 34 (Shepherd Dep. 34:3–6).

Dr. Shepherd scheduled appointments and maintained the dental-care waitlist himself. *Id.* at 24, 29, 33 (Shepherd Dep. 24:21–23, 29:12–17, 33:2–10). If an inmate requested to see him, then "the person [wa]s going to be seen." *Id.* at 24, 29 (24:21–23, 29:12–17). Unless a complaint was "life-threatening," it was "taken in order of . . . complaint." *Id.* at 30, 31–32 (30:1–7, 31:20–32:1). According to Dr. Shepherd, because "there is no way to assess

7

dental pain," he placed all complaints based solely on pain on a wait list.  *Id.* at 31 (31:11–32:14).

### 2. Andrew Rupska

Mr. Rupska served as Health Services Administrator at FCC Terre Haute from April 7, 2013 through November 26, 2017.  Dkt. 89-1 at 1 (Rupska Decl. ¶ 2).  He directed the administration of the Health Services Department, *id.* at 2 (¶ 5), and approved BOP policies and procedures, dkt. 89-2 at 14, 15–16 (Rupska Dep. 14:15–19, 15:2–16:4).  Before approving a dental policy, Mr. Rupska consulted the Clinical Director, the Chief Dental Officer, the Associate Warden over Health Services, and usually the Warden.  *Id.* at 16–17 (16:8–17:1).

Mr. Rupska is a registered nurse, *id.* at 9 (Rupska Dep. 9:1–15), but as Health Services Administrator, he "did not provide direct medical or dental care to inmates unless a medical emergency arose," dkt. 89-1 at 2 (Rupska Decl. ¶ 5).  He assessed whether employees followed policies and procedures in the prison's medical and dental care.  Dkt. 89-2 at 9, 23 (Rupska Dep. 9:21–23, 23:8–16).  If Mr. Rupska determined that an employee did not follow a prison policy, Mr. Rupska could intervene and "take it to the next step."  *Id.* at 36 (36:2–5).  Mr. Rupska also processed administrative grievances filed by inmates about their medical care.  Dkt. 89-1 at 2 (Rupska Decl. ¶ 8).  If a grievance involved a dental issue, he usually instructed his assistant to send the complaint to Dr. Shepherd to investigate and respond.  *Id.*; dkt. 89-2 at 25–27 (Rupska Dep. 25:23–27:5).

### 3. Charles Daniels

Charles Daniels served as Warden at FCC Terre Haute from February 22, 2015 until December 31, 2016. Dkt. 89-4 at 1 (Daniels Decl. ¶ 1). In this role, he "did not treat patients or participate in clinical medical or dental decisions." *Id.* at 1 (¶ 4). Mr. Daniels had no qualifications to render or decide dental treatment, did not possess prescriptive privileges, and did not participate in scheduling inmate dental treatment. *Id.* at 1–2 (¶ 4). But as Warden, he "had final authority for administrative decisions" and "was responsible" for ensuring that medical diagnoses "were consistent with law, statute," and prison policy. Dkt. 89-5 at 23 (Daniels Dep. 90:21–94:8). Like all employees, he had an obligation to abide by and implement BOP policies. *Id.* at 24 (95:13–16).

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party and draw[s] all

reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### III.
### Analysis

"[P]rison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs." *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To defeat summary judgment on such a claim, a plaintiff must satisfy both an objective and a subjective element. *Id.* "He must first present evidence supporting the conclusion that he had an objectively serious medical need." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). He must also demonstrate a genuine issue of fact on the subjective question of whether the doctor and prison officials "were aware of this serious medical need and were deliberately indifferent to it." *Id.*

For summary-judgment purposes, Defendants do not dispute that Mr. Davis' severe tooth pain constitutes an objectively serious medical condition. *See* dkt. 90; *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."). The only question therefore is whether a reasonable jury could find that each Defendant was deliberately indifferent to his condition. To establish this subjective element, a plaintiff must show more than negligence—

"something akin to recklessness." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir.), *cert. denied*, 140 S. Ct. 50 (2019).

### A. Dr. Shepherd

Mr. Davis alleges that Dr. Shepherd acted with deliberate indifference by failing to: (1) prioritize his complaints, (2) follow BOP policy, (3) develop pain assessment criteria, (4) treat his pain and infection, and (5) timely respond to his requests for treatment. Dkt. 97 at 4, 12 (¶¶ 15–17, 85–91). Dr. Shepherd argues that he is "absolutely immune from liability" because of his position as a commissioned officer in PHS during the relevant period. Dkt. 90 at 16. Mr. Davis responds that Dr. Shepherd is estopped from asserting immunity. Dkt. 97 at 22.

### 1. Estoppel

Mr. Davis argues that Dr. Shepherd should be "equitably estopped from evading liability by claiming immunity" because Dr. Shepherd wrote a message to him on BOP letterhead and three court filings represented Dr. Shepherd as a current or former BOP employee. *Id.* at 5 ¶ 31, 6 ¶ 33–35 (referencing dkt. 9; dkt. 18; dkt. 21), 22. Mr. Davis argues that, for these reasons, it took him over a year to learn that PHS, and not BOP, employed Dr. Shepherd as a dentist. Dkt. 70 at 2 ¶ 7.

However, Mr. Davis cites no authority supporting his call for estoppel. Moreover, the United States submitted the cited court filings *before* Dr. Shepherd appeared in the case. *See* dkt. 30 (Notice of Appearance). Indeed, on the day his attorney filed her appearance, Dr. Shepherd cured any

11

misrepresentations by raising absolute immunity as an affirmative defense in his answer, dkt. 31 at 8, and in the tendered case management plan, dkt. 34 at 2. Estoppel therefore does not apply.

### 2. FTCA Immunity

The Federal Torts Claims Act ("FTCA") provides the "exclusive" remedy for personal injury claims relating to medical or dental functions against "any commissioned officer or employee of the [PHS] while acting within the scope of his office or employment." 42 U.S.C. § 233(a); *see Hui v. Castaneda*, 559 U.S. 799, 812 (2010). Section 233(a) therefore "precludes *Bivens* actions against individual PHS officers or employees for harms arising out of conduct described in that section." *Hui*, 559 U.S. at 812.

Here, Dr. Shephard (1) was a "commissioned officer or employee of the Public Health Service" and (2) acted "within the scope of his office or employment." 42 U.S.C. § 233(a); *see Early v. Shepherd*, No. 2:16-cv-00085-JMS-MJD, 2017 WL 4650873, at *2 (S.D. Ind. Oct. 17, 2017) (employing the two-prong approach). First, Dr. Shepherd was a commissioned Captain with PHS when he treated Mr. Davis at BOP. Dkt. 89-9 at 1 (Shepherd Decl. ¶ 2); dkt. 89-8 at 9, 10–11 (Shepherd Dep. 9:1–6, 10:16–11:15). Mr. Davis argues that a triable issue of fact exists as to Dr. Shepherd's employment status based solely on the letterhead on his December 15, 2015 memo to Mr. Davis —which said, "U.S. Department of Justice, Federal Bureau of Prisons." *See* dkt. 97 at 5 ¶ 31; dkt. 89-11. But this letterhead does not contradict Dr. Shepherd's sworn declaration and deposition testimony that he "was detailed to" FCC Terre Haute

12

as a "commissioned . . . Captain with the United States Public Health Service." Dkt. 89-9 at 1 (Shepherd Decl. ¶ 2); dkt. 89-8 at 9, 10–11 (Shepherd Dep. 9:1–6, 10:16–11:15).

Second, Mr. Davis does not dispute that his allegations arise out of Dr. Shepherd's employment as a dentist. *See* dkt. 97 at 4 ¶¶ 15–17, 12 ¶¶ 85–91. Therefore, Dr. Shepherd is entitled to absolute immunity. *See Hui,* 559 U.S. at 812.

### B. Andrew Rupska

Mr. Davis alleges that Mr. Rupska acted with deliberate indifference by failing to exercise his authority as Health Services Administrator to implement and supervise established dental policies when addressing Mr. Davis' complaints. Dkt. 97 at 4–7, 18–19 (¶¶ 19–21, 26, 32, 46–47, 50). Mr. Rupska argues that he's entitled to summary judgment because he "cannot be held liable under *Bivens*" since he "did not directly participate in providing medical care to [Mr.] Davis." Dkt. 90 at 13. Mr. Davis responds that, as Dr. Shepherd's supervisor, Mr. Rupska received adequate notice to alert him to an excessive risk of Dr. Shepherd's alleged deliberate indifference to Mr. Davis' dental needs. Dkt. 97 at 19.[1]

Although Mr. Rupska is a nurse, Mr. Davis seeks to hold Mr. Rupska accountable only in his capacity as Health Services Administrator. *See id.* at 4, 5, 6, 7, 18–19 (¶¶ 19–21, 26, 32, 46–47, 50); *see Rasho,* 856 F.3d at 479 ("While [defendants] were themselves medical professionals who might

---

[1] The Court does not decide whether Dr. Shepherd was deliberately indifferent.

13

ordinarily be held to a different standard than a non-medical prison official, in this case [plaintiff] seeks to hold [defendants] accountable as prison administrators and policymakers, not treaters."). And non-treating prison "officials may reasonably defer to the judgment of medical professionals regarding inmate treatment." *Giles*, 914 F.3d at 1049. "The only exception to this rule" is if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *King*, 680 F.3d at 1018.

Here, no designated evidence suggests that Mr. Rupska knew or had reason to believe that Dr. Shepherd was "mistreating (or not treating)" Mr. Davis. Mr. Rupska received Mr. Davis' email about his dental pain on December 13, dkt. 89-3, and he responded the next morning, saying that he forwarded Mr. Davis' request to the dental department, *id.*; dkt. 89-2 at 77 (Rupska Dep. 77:3–6).

On December 16, Mr. Rupska read Dr. Shepherd's response to Mr. Davis, which said that because Mr. Davis did not suffer from "an urgent condition," Dr. Shepherd placed him on a wait list and prescribed him an antibiotic without seeing him. Dkt. 89-11; dkt. 89-12. After reading this, Mr. Rupska said that he "agree[d] with it" and that "if [Mr. Davis] were on the street, no other dentist would place [Mr. Davis] ahead of any other patients regardless of [his] pain." Dkt. 89-18 at 35–36 (Davis Dep. at 35:19–36:13). This does not show that Mr. Rupska knew or should have known about any mistreatment of Mr. Davis. Instead, it shows that that Mr. Rupska knew that

14

Dr. Shepherd *was* treating Mr. Davis with antibiotics. *Cf. King*, 680 F.3d at 1018.

Mr. Davis nevertheless contends that Mr. Rupska, "as a supervisor," had reason to know that Dr. Shepherd was not treating Mr. Davis *properly*. Dkt. 97 at 19. The parties dispute the nature of Mr. Rupska's supervisory role over Dr. Shepherd, *id.* at 4 ¶ 19; dkt. 101 at 5, but even if Mr. Rupska had supervised Dr. Shepherd clinically, he could not be held vicariously liable for the acts of a subordinate, *see Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a . . . *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer."). Instead, Mr. Davis must show that Mr. Rupska "knew of risks with sufficient specificity to allow an inference that inaction is designed to produce or allow harm." *Vance v. Rumsfeld*, 701 F.3d 193, 204 (7th Cir. 2012) (en banc) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

Here, Mr. Rupska read Dr. Shepherd's December 16, 2015 email response to Mr. Davis. Dkt. 89-18 at 35–36 (Davis Dep. 35:19–36:9). But nothing in Dr. Shepherd's response email revealed deliberate indifference. *See* dkt. 89-11. Dr. Shepherd's response email noted that a nurse triaged him and did not observe "visible swelling or drainage," so Mr. Davis' "condition [wa]s not considered life threatening." *Id.* It also informed Mr. Davis that he had been placed on the waiting list and would receive "a prescription for antibiotics to counter any underlying problem . . . not visible with obvious swelling and drainage." *Id.* None of this qualifies as objective evidence of mistreatment.

15

Additionally, while Mr. Rupska had experience dealing with dental emergencies as a nurse, he was not a dentist and thus had little justification for second-guessing Dr. Shepherd's dental treatments. Dkt. 89-2 at 12, 23 (Rupska Dep. 12:6–18, 23:2–7). Accordingly, no evidence suggests that Mr. Rupska was aware of any mistreatment of Mr. Davis because of his supervisory position.

Finally, Mr. Davis seeks to hold Mr. Rupska accountable because he allegedly misinterpreted BOP Policy 6400.02. Dkt. 97 at 19. Under that policy, all inmates should have access to 24-hour emergency dental care, which includes "treatment for relief of severe dental pain" and "acute infections." Dkt. 97-1 at 10–11. But even if Mr. Rupska incorrectly interpreted and applied FCC Terre Haute's dental policy, "a violation of [a] guideline or policy is not sufficient to demonstrate deliberate indifference because *Bivens* claims 'protect[] against constitutional violations, not violations of departmental regulation and practices.'" *Collier v. Caraway*, No. 2:14-CV-00365-JMS-MJD, 2017 WL 6316312, at *11 n.4 (S.D. Ind. Dec. 11, 2017) (quoting *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017)). The issue remains whether Mr. Rupska knew or should have known that Dr. Shepherd mistreated Mr. Davis' tooth pain. *See King*, 680 F.3d at 1018. Mr. Davis has designated no evidence showing a triable question of fact on that issue, so Mr. Rupska is entitled to summary judgment.[2]

---

[2] Because Mr. Rupska did not violate Mr. Davis' constitutional rights, the Court does not consider Mr. Rupska's qualified immunity defense. *See Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057–58 (7th Cir. 2011).

16

### C. Charles Daniels

Warden Daniels moved for summary judgment, arguing that he had no personal involvement with Mr. Davis' dental care and treatment and did not act with deliberate indifference toward Mr. Davis. Dkt. 90 at 11. Mr. Davis contends that Warden Daniels "allowed, knew of or consented to Dr. Shepherd's conduct" and misapplied BOP policy. Dkt. 97 at 15.

As discussed above, "non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment," *Giles,* 914 F.3d at 1049, unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," *King,* 680 F.3d at 1018. None of Mr. Davis' designated evidence suggests that Warden Daniels knew or had reason to believe that Dr. Shepherd mistreated or failed to treat Mr. Davis. Warden Daniels' only personal involvement with this case was when he denied Mr. Davis' request for administrative review. Dkt. 89-7. His response to that request stated that "only life[-]threatening issues are considered urgent to the point of being seen before other complaints" and that Mr. Davis' symptoms were "routine in nature." *Id.* He also noted that the dentist would "not prescribe [Mr. Davis] a stronger pain medication for this type of complaint," described Dr. Shepherd's antibiotic prescriptions for Mr. Davis, drew attention to the availability of over-the-counter pain medication, and acknowledged the possibility of "re-evaluation" if his condition worsened. *Id.* The evidence thus shows that Warden Daniels considered Mr. Davis'

17

condition and the treatment he received for it and did not know (or have reason to believe) that Mr. Davis suffered from any mistreatment.

Still, Mr. Davis contends that Warden Daniels had notice of his request for pain medication and "actively and affirmatively refused the complaint by misconstruing the policy which he was responsible to interpret and administer." Dkt. 97 at 17.  But again, a defendant's breach of a prison policy alone does not establish a constitutional violation.  *See Collier,* No. 2:14-CV-00365-JMS-MJD, 2017 WL 6316312, at *11 n.4.  And no evidence suggests that Warden Daniels acted with the requisite degree of culpability (something like recklessness).  *Giles*, 914 F.3d at 1049.  Warden Daniels is therefore entitled to summary judgment.[3]

## IV.
## Conclusion

Defendants' motion for summary judgment, dkt. [89], is **GRANTED**. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 11/25/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[3] The Court therefore does not consider whether Warden Daniels would be entitled to qualified immunity.  *See Mucha*, 650 F.3d at 1057–58.

Distribution:

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

Justin R. Olson
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
justin.olson2@usdoj.gov

Sarah L. Ottinger
sottinger1010@gmail.com

Mark W. Sniderman
FINDLING PARK CONYERS WOODY & SNIDERMAN, PC
msniderman@findlingpark.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov